**BALTIMORE LUMBER COMPANY, Inc.**
v.
**Herbert MARCUS, Louis Marder, and Louis Marder and Herbert Marcus, co-partners, Trading as Bilt-Well Company.**

Civ. A. No. 9827.

United States District Court
D. Maryland.

Sept. 19, 1962.

See also 179 F.Supp. 179.

Lawrence I. Weisman and M. Peter Moser, Nyburg, Goldman & Walter, Baltimore, Md., David M. Blum, Baltimore, Md., (of counsel), for plaintiff.

J. Paul Rocklin and Norman P. Rocklin, Rocklin & Rocklin, Baltimore, Md., for defendant Marcus.

R. DORSEY WATKINS, District Judge.

The background of this litigation is set forth in some detail in this court's previous memorandum denying without prejudice defendant's motion to dismiss. Baltimore Lumber Company, Inc. v. Herbert Marcus and Louis Marder, and Louis Marder and Herbert Marcus, co-partners Trading as the Bilt-Well Company, 1959, D.Md., 179 F.Supp. 179. For the purpose of this opinion it will suffice that plaintiff alleges a contractual liability on the part of defendant Marcus for various commercial transactions conducted with plaintiff in Maryland in 1957, it being alleged that Marcus is liable on such transactions as a partner by estoppel, Maryland Code of Public General Laws, 1957 edition, Article 73A, Section 16. Service of process was made by registered mail on defendant Marcus in accordance with the provisions of Article

75, Section 78 of the Maryland Code of Public General Laws, 1957 edition. No question is raised as to adequate compliance with the procedural requirements of this statute.

Marcus filed a motion to dismiss the action or in the alternative to quash the return of service, on the grounds that he is a citizen and resident of the "State" of Pennsylvania and was not and is not subject to service of process issuing out of the District (State) of Maryland, and that the complaint fails to state a claim against him on which relief can be granted. At the prior hearing on this motion this court held that controverted issues of fact existed, and denied the motion with right to the parties to have the motion set down for further hearing on oral testimony and/or depositions. Such a hearing was ultimately held, at which plaintiff produced two witnesses. Counsel for defendant Marcus stated in open court that he had advised his client of the date of the hearing, requesting him to be present and testify but that Marcus had failed to appear, and in fact had not been in communication with his counsel. No evidence was offered on behalf of defendant Marcus.

The questions for disposition accordingly are whether or not the complaint states a claim upon which relief can be granted, and whether or not defendant Marcus is subject to substituted service. On the first of these, it is quite clear that the allegations of the complaint, summarized in 179 F.Supp. 179, would if proved constitute a cause of action.

The second point—whether or not defendant Marcus is subject to substituted service, presents two questions: (1) has defendant Marcus done business or performed work or service within the State of Maryland which would make him amenable to substituted service, and if so (2) does the Maryland statute purport to make him amenable to such service. The court concludes that both questions should be answered in the affirmative. The answer to the first presents no problem to the court; the second presents certain difficulties, but results in no ultimate doubt as to the correct answer.

On the uncontroverted testimony and exhibits, which the court on its observation of the witnesses and the inherent probabilities credits, the court finds as facts that in the Spring of 1957 the Bilt-Well Company, a sole proprietorship or partnership, was engaged in the solicitation in Maryland of contracts for the construction in Maryland of a substantial number of garages; that defendant Marcus, in Maryland, represented that he was "behind the business" and that he would be personally responsible for work done by others for Bilt-Well; that work done on such garages was advertised on large signs on the properties as jobs by Bilt-Well; that defendant Marcus was introduced as the financial backer of Bilt-Well, and that he agreed with this description of his status; that defendant Marcus represented to plaintiff that he and another owned the operation; that plaintiff furnished materials in reliance on such representation; that defendant Marcus was present at an office of Bilt-Well in Baltimore, Maryland at least three times during June 1957; that Marcus promised to pay plaintiff $2,000 on June 18, 1957, for lumber supplied by plaintiff; that materials for the purchase price of which suit is brought were sold on this and the general representation by defendant Marcus of his backing of the operation; that in a telephone conversation between a representative of plaintiff in Baltimore, Maryland and defendant Marcus in Philadelphia, Pennsylvania on July 2, 1957, defendant Marcus said that he had run the business in Baltimore as well as he could in the absence of defendant Marder; and defendant Marcus did not deny his personal liability when told by plaintiff that he owed the plaintiff for materials furnished.

On the foregoing facts, the court finds as a fact and concludes as a matter of law that defendant Marcus incurred a personal liability to plaintiff for the materials supplied by plaintiff for the

operation in which defendant Marcus asserted and acknowledged his responsibility.[1] The complaint, alleging facts substantially in accord with those found by the court, states a claim upon which relief can be granted, if the court has jurisdiction over the defendant Marcus.

The second question—whether or not defendant Marcus is amenable to suit and service—involves two aspects: whether or not Maryland (a) could provide and (b) has provided, a method for effecting service upon a non-resident in connection with a suit in Maryland based upon activities of the above character.

■ (a) Marcus' presence in Maryland, in connection with a series of transactions to be, and in fact, carried out within Maryland, his active management in Maryland of the business over at least a week and probably longer, and his undertaking within Maryland to be answerable for indebtedness so arising, seem to the court more than sufficient to meet the requirement that " 'in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." ' " McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 225–226, quoting verbatim, International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; Compania De Astral, S. A. v. Boston Metals Co., 1954, 205 Md. 237, 257, 258, 259, 263–264, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646. See also, Reiblich, Jurisdiction of Maryland Courts Over Foreign Corporations Under the Act of 1937, 3 Md.L.Rev. 35, 70 (1938); Sobeloff, Jurisdiction of State Courts over Non-residents in our Federal System, 1957, Cornell Law School, Frank Irvine Lecture, pp. 12–14; Stimson, Omnibus Statutes Designed To Secure Jurisdiction Over Out-of-State De-

fendants, 48 Am.Bar Ass'n. Journal 725, 729 (1962).

(b) Article 75, Section 78 of the Maryland Code of Public General Law provides in pertinent part as follows:

"Any nonresident, person, firm, partnership, general or limited, *not qualified under the laws of this State as to doing business herein,* who shall do any business or perform any character of work or service in this State, shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State to be the true and lawful attorney or agent of such nonresident, upon whom process may be served \* \* \*." (Emphasis supplied).

■ There can be no doubt but that the conduct of defendant Marcus described above, meets the requirement that for service through the Secretary of State the defendant shall have done some business or performed some character of work within the State of Maryland. The problem arises from a construction of the italicized language; what is meant by "not qualified under the laws of this State as to doing business herein," when applied to a person or a partnership; particularly if there is no statutory provision for qualification of the individual or partnership. So far as the court has been advised, or could determine from its own research, this question has not been passed upon by the Maryland Court of Appeals, and apparently has been considered by only two nisi prius judges; Judge Warnken of the Superior Court of Baltimore City in Harris v. Craig, 1356/1959 (1960), and Chief Judge Thomsen of this court in Maternity Trousseau, Inc. v. Maternity Mart of Baltimore, Inc., D.Md.1961, 196 F.Supp. 456.

In Harris v. Craig, Judge Warnken, after stating that what "not qualified"

1. For the decision of this motion, it is not necessary to determine whether this liability is that of a partner or a guarantor acting because of personal interest.

means "with respect to an *individual* [2] as distinguished from a corporation is not too certain", held that the defendant, who had "duly obtained a license from the Maryland Racing Commission to operate as owner and trainer of harness racing horses in Maryland" [3] * * * "[had] with respect to obtaining said license met the requirement of Section 78 so as not to be subject to constructive service of process. Therefore, as the right to resort to the constructive service provided for in that section can only be invoked when the defendant had *not* [4] qualified, I must reach the conclusion that the motion to quash the attempted service of process on the defendant must be granted."

The problem was succinctly stated, and answered differently, by Chief Judge Thomsen in the Maternity Trousseau case, where he said (196 F.Supp. at 457):

" * * * Marilyn Weinstein also argues that Art. 75, sec. 78 applies only to nonresident persons, firms and partnerships which are required to qualify under the laws of the State of Maryland in order to do business therein and who have not so qualified. I do not agree. Persons, firms and partnerships who are required to qualify under the laws of Maryland in order to do business in this State ordinarily are required to designate an agent, upon whom process against such person, firm or corporation may be served. For example, under Art. 56, secs. 212 and 219, nonresident real estate brokers who qualify to do business in Maryland must designate the Secretary of the Real Estate Commission of Maryland as their agent for the service of process. Service on persons, firms or partnerships who have so qualified must be made on the designated agent. Service on other persons, firms or partnerships, who are not required to qualify or who have not qualified under the laws of Maryland, and therefore do not have such an agent, may be made on the Secretary of State under Art. 75, sec. 78." [5]

Judge Thomsen's conclusion that Article 75, Section 78 was intended to permit constructive service upon non-resident persons who are not required to qualify, and so do not have an agent for service, or who are required to qualify but do not, and so do not have an agent for service, seems the more reasonable. [6] Section 78 was clearly intended to increase the jurisdiction of the Maryland Courts at least over non-residents who had personally transacted business therein. If "qualified" were to be construed as equivalent to "licensed" under a statute not providing for some form of actual or constructive appointment of an agent for service, an invidious loophole would be introduced. [7] But if "qualified" means registration under a statute providing for the appointment of an agent for the service of process, it serves a logical purpose. In certain instances, such as the case of non-resident real estate brokers, the law requires the broker to file with the Real Estate Commission of Maryland an irrevocable consent that

2. Emphasis in original.

3. No statutory reference for the granting of such "license" is cited. There is no statement or suggestion that such "license" required the licensee actually to appoint an agent for service of process. Since the court held that constructive service under Article 75, Section 78 was not available, and as no reference was made to, or is known to this court of, any other constructive service statute available, it would seem that this "qualification" carried immunity from *any* constructive service.

4. Emphasis in original.

5. It does not appear that Judge Warnken's opinion was called to the attention of Chief Judge Thomsen.

6. In view of the specific finding by Judge Warnken that the defendant in the Harris case had "qualified", the balance of his opinion may be considered dictum; but the practical effect of his opinion makes it a little difficult to dismiss it on this basis.

7. And a serious question of constitutionality might well arise from the discrimination.

suits may be commenced against him "by the service of any process or pleading authorized by the laws of this State on the secretary of the Commission * * *." [8] In such instances, where the provisions of a specific applicable law with respect to qualification have been met, and such law requires service upon some state official other than the Secretary of State, Section 78 would not apply. However, where the law makes no provision for qualification by a non-resident and for the appointment (actual or constructive) of a resident agent, or where such provision exists but has not been met, Section 78 would be applicable, and fill what would otherwise be a serious gap.

When Section 78 of Article 75 was enacted by the Maryland Legislature, there were already existing in Mississippi (2 Mississippi Code, (1942) Section 1437), Alabama (3 Alabama Code (1960), Title 7, Section 199(1)—first enacted in 1949) and Arkansas (3A Arkansas Statutes Annotated (1947), Section 27–340) statutory provisions relating to substituted service on non-residents doing business or performing work or service in the state.

The Mississippi provision is as follows:

"Any non-resident, person, firm, partnership, general or limited, *or any corporation not qualified under the constitution and laws of this state as to doing business herein,* who shall do any business or perform any character of work or service in this state, shall, by the doing of such business or the performing of such work or services, be deemed to have appointed the secretary of state, or his successor, or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action, accrued or accruing from the doing of such business or the performing of such work or service, or as an incident thereto by such non-resident, or his, their or its agent, servant or employee. * *" [9]

(Emphasis supplied).

In all three statutes the words "or any corporation" appear immediately after the word "limited," and are not separated by a comma from the language "not qualified under the constitution and laws of this state as to doing business herein." Accordingly, in these statutes the last-quoted language is restricted to corporations, and does not apply to individuals or partnerships.

The language of Section 78 of Article 75 is clearly taken from these statutes [10] with, however, the omission of the words "or any corporation." Presumably this was done to avoid conflict with, or redundancy as to, the specific provisions of Article 23, Sections 96–99, dealing with service on non-resident corporations. Failure to omit the following words "not qualified under the constitution and laws of this state as to doing business herein," has led to an unfortunate lack of clarity. The retention of this language seems explicable upon only one of two grounds; either (a) it was retained in error; or (b) the Legislature intended the language to apply to non-resident individuals and partnerships in the same sense in which it was applicable to corporations; i. e., not "qualified" in the sense of not having appointed an agent for the service of process.

---

8. Maryland Code of Public General Laws, Article 56, Section 219(d), 1957 edition.

9. The Alabama and Arkansas provisions are substantially verbatim but omit the comma after "non-resident" in the first line.

10. In their brief counsel for plaintiff asserted that the sponsor of Article 75, Section 78 confirmed the fact that Section 78, with the omission indicated, was taken either from the Mississippi or Arkansas statute. Defendant has not taken issue with this.

As no question of plagiarism or copyright violation is involved, it is immaterial which statute was copied. Since Mississippi is the only one having the comma after "non-resident" in the first line, it is the most likely source.

858

The approach to a problem of statutory construction, such as this, has been the subject of numerous court decisions. The applicable rules are clearly stated by the Maryland Court of Appeals in Pressman v. State Tax Commission, 1954, 204 Md. 78, 88, 90, 102 A.2d 821:

"It has been repeatedly stated as a general rule that a court may not surmise a legislative intention contrary to the plain language of a statute, nor insert or omit words to make the statute express an intention not evidenced in its original form. (Citations omitted). However, where words are found in a statute which appear to have been inserted through inadvertence or mistake, and which are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it, and the statute is complete and sensible without them, they may be rejected as surplusage." (Citations omitted). 204 Md. at page 88, 102 A.2d at page 827.

"* * * The cardinal rule of statutory construction is that the court should ascertain from the entire statute the intention to be accomplished by the enactment. When that intention is clear it should be carried out, even though it may be necessary to strike out or insert certain words." 204 Md. at page 90, 102 A.2d at page 828.

To the court it is clear that the purpose of Section 78 of Article 75 was to act as a catch-all for any [11] non-resident person or partnership who or which had not appointed, actually or constructively, an agent upon which process could be served—whether such failure resulted from lack of statutory provision therefor, or from failure to comply with

any applicable statute. In this sense "qualified" would exempt those persons who had appointed an agent for the service of process; but the statute would cover those "not [so] qualified." Any other construction would make the language "incapable of any sensible meaning" and "tend to nullify" the statute—in which event it should be omitted, and the statutory meaning would be clear, sensible and unambiguous. Under either construction, the defendant Marcus would be subject to service under Article 75, Section 78.

The motion to dismiss, or in the alternative to quash service, is denied.

---

11. Section 78 of Article 75 was enacted as Chapter 297 of the Laws of 1955. Its title reads:

"AN ACT to add a new section to Article 75 of the Annotated Code of Maryland (1951 Edition), title 'Pleading, Practice and Process at Law', sub-title 'Process', said new section to be known as Section 159A and to follow immediately after Section 159 thereof, relating to the service of process on *any* non-resident of this State doing any business or performing work or services in this State." (Emphasis supplied).