The HAMILTON NATIONAL BANK OF CHATTANOOGA

v.

Robert A. RUSSELL, Dale Smith Warner, Thomas Anglin Hamilton, May Powell Smith, William I. Smith, Individually and as Executor under the Will of Edward J. Smith, Deceased, and Eunice Branch Hamilton and Harry Matthews, Co-Executor under the Will of Edward J. Smith, Deceased.

Civ. A. No. 4646.

United States District Court
E. D. Tennessee, S. D.

Aug. 8, 1966.

Moon, Harris & Dineen, Chattanooga, Tenn., for plaintiff.

Miller, Martin, Hitching, Tipton & Lenihan, Chattanooga, Tenn., for Robert A. Russell and Thomas A. Hamilton.

Noone, Moseley & Bell, Chattanooga, Tenn., for Dale Smith Warner, May Powell Smith and William I. Smith.

Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., for Eunice Branch Hamilton.

Knox, Jones, Woolf & Merrill, Anniston, Ala., Bradley, Arant, Rose & White, Birmingham, Ala., for Robert A. Russell, Thomas A. Hamilton, and Eunice B. Hamilton.

## OPINION

FRANK W. WILSON, District Judge.

This is an action upon a note wherein plaintiff seeks to bring defendants before the Court upon substituted service under the provisions of the Tennessee "Long Arm Statute", Sections 20–235 et seq., Tennessee Code Annotated. The case is before the Court upon motions of the defendants to quash or set aside service of process and to dismiss for lack of in personam jurisdiction.

The question is whether in personam jurisdiction over each of the defendants may be exercised by this Court consistent with the requirements of the Due Process Clause of the Fourteenth Amendment, United States Constitution. Although there are no constitutional prohibitions upon service of process of a United States District Court anywhere in the United States, such service is limited by statute, with certain exceptions, to the state in which the District Court sits. One of the exceptions is embodied in Rule 4(d) (7), Federal Rules of Civil Procedure, wherein service of summons is authorized "in the manner prescribed by the law of the state in which the district court is held". Such state law must, of course, meet the requirements of due process under the Fourteenth Amendment. The legislation in question was enacted in early 1965 and has received no construction, as far as is known to the Court, by the appellate courts of the State of Tennessee. The Tennessee Legislature provided in the last section of the "long-arm" statute (T.C.A. § 20–240) that:

"* * * This law is in the nature of remedial legislation and it is the legislative intent that it be given a liberal construction."

The Court is of the opinion, therefore, that the legislation is intended to exercise the power of the State fully, that is, to the extent allowed under the provisions

of the Fourteenth Amendment, but no further. Thus, in determining the scope of the statute, the Court must turn to the case law which defines the limits of state power in this field.

Due process requires that a court have jurisdiction of the person of the defendant before it can render as to him a valid in personam judgment or decree. Vanderbilt v. Vanderbilt, (1957) 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456. As applied to state exercises of jurisdiction, this restriction is no mere guarantee against inconvenience, but is a consequence of territorial limitations upon the power of the respective states. Hanson v. Denckla, (1958) 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283. The exercise of jurisdiction over the person requires a basis therefor. In earlier times, the only recognized basis of in personam judicial power was personal service of process upon a defendant physically present in the forum state. Pennoyer v. Neff, (1877) 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565. In the 20th Century, the need for personal jurisdiction over nonresidents arising out of increased commerce and mobility and the easing of the burden of defending foreign litigation via progress in communications and transportation produced a trend toward the expansion of recognized bases of state power over nonresidents. See McGee v. International Life Ins. Co., (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Thus bases of state power other than physical presence (with personal service) were from time to time recognized by the United States Supreme Court, where such state power had been delegated to courts by enactment of appropriate legislation containing proper provisions for notice. See Hess v. Pawloski, (1927) 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (driving an automobile upon the highways of the forum state); Young v. Masci, (1933) 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (loaning automobile in foreign state subsequently driven into forum state); Henry L. Doherty & Co. v. Goodman, (1935) 294 U.S. 623, 55 S.Ct. 553, 79 L. Ed. 1097 (selling securities within the forum state); and Milliken v. Meyer, (1940) 311 U.S. 457, 61 S.Ct. 339, 85 L. Ed. 278 (domicile in the forum state). Piecemeal recognition of state bases of in personam power and the traditional legal fictions upon which in personam jurisdiction was thought to be grounded in these cases came to an end with the landmark case of International Shoe Co. v. State of Washington, (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, wherein Chief Justice Stone, speaking for the Supreme Court, laid down the following rule:

> " * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Defendants in the instant case contend that the doctrine of *International Shoe* is only dictum as to individuals, since the defendant in that case was corporate. This may be true, strictly speaking, but the proposition that the Supreme Court intended that the "minimum contacts" test apply to corporations but not to individuals finds no support in the language used in the *International Shoe* opinion or in more recent opinions. In fact, the language used by the Court indicates that the *International Shoe* test has broad application to all nonresident defendants. See *International Shoe*, supra, at page 319 of 326 U.S., 66 S.Ct. 154, *McGee*, supra, at page 222 of 355 U.S., 78 S.Ct. 199, and *Hanson*, supra, at page 250 of 357 U.S., 78 S.Ct. 1228. It is worthy of note in this regard that Chief Justice Stone, in *International Shoe*, cited as authority for the language quoted above the *Milliken*, *Hess* and *Young* cases, as well as Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L. Ed. 375, and McDonald v. Mabee, 243 U. S. 90, 37 S.Ct. 343, 61 L.Ed. 608, all of which were cases involving individual defendants. Further, the Supreme Court, in Olberding v. Illinois Central R. Co.,

(1953) 346 U.S. 338, 74 S.Ct. 83, 98 L. Ed. 39, made it clear that the automobile cases rested, not upon the fiction of implied consent to accept process, but upon the substance of the nonresident driver's contact with the forum state, a clear indication that "minimum contacts" is the test for individual as well as corporate defendants. Defendants rely heavily on the case of Flexner v. Farson (1919) 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250, which is said to deny state power to provide for substituted service over nonresident individuals even though they do business in the forum. There are many reasons why Flexner v. Farson is weak authority, not the least of which is that it is inconsistent with the doctrine set forth in the later cases. See the annotation at 94 L.Ed. 1176. Defendants also rely on Pennoyer v. Heff, supra, but, of course, *Pennoyer* is no longer valid insofar as it limited in personam state power strictly to cases where in-state service had been obtained.

██ The "minimum contacts" or "substantial justice" standard set out in *International Shoe,* supra, has been subject to some criticism as being too vague to be of practical use. However, the Supreme Court, in the case of Hanson v. Denckla, cited above, provided some clarification in regard to the "minimum contacts" rule:

> "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 253, 78 S.Ct. 1240, 2 L.Ed.2d 1298.

The Court is of the opinion then that it may exercise in personam jurisdiction over these defendants and each of them, if they have certain "minimum contacts" with Tennessee, purposefully established, and of such a nature that the maintenance of this lawsuit does not offend "traditional notions of fair play and substantial justice". Of course, what may

be "fair play" and "substantial justice" as to corporations may not be such as to individuals and corporation cases should be received cautiously as precedent for cases involving individual defendants.

Plaintiff contends that each of the defendants has either "transacted business" or "owns property" within the State of Tennessee, and that such activity constitutes sufficient contact with the State to justify the exercise of in personam jurisdiction under the terms of T.C.A. § 20–235:

> "Persons who are nonresidents of Tennessee * * * are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> "(a) The transaction of any business within the state;
>
>   * * * * * *
>
> "(c) The ownership or possession of any interest in property located within this state;
>
>   * * * * * *
>
> " * * * Any such person shall be deemed to have submitted to the jurisdiction of this state whc acts in the manner above described through an agent or personal representative."

The complaint alleges that defendants Robert A. Russell, Thomas Anglin Hamilton and the Estate of Edward J. Smith, deceased, are indebted to plaintiff by note. William I. Smith and Harry Matthews are party defendants as co-executors of the Smith Estate. At the hearing upon this motion it was represented to the Court by attorneys for plaintiff, and without substantial dispute on behalf of any defendant, that Robert A. Russell, Thomas Anglin Hamilton, and Edward J. Smith executed the note in Alabama, that Edward J. Smith then brought the note to Chattanooga and delivered it to plaintiff, and that plaintiff then deposited the proceeds of the note to the account of the City National Bank of Sylacauga, Alabama, which account was maintained in the plaintiff bank. The note was made payable at the offices of the plaintiff in Chattanooga.

The only allegations in the complaint, and the only contentions on behalf of the plaintiff, as the Court understands its position, which refer to the other defendants, William I. Smith, individually, May Powell Smith, Dale Smith Warner, and Eunice Branch Hamilton, are that certain stock certificates standing in the respective names of these defendants were pledged as collateral for the indebtedness sued upon. It is not contended that any of the stock powers were executed in Tennessee, but it is asserted, without material dispute, that the certificates were in some manner delivered to plaintiff in connection with the note. These stock certificates are before the Court upon attachment. These defendants aver that the stock powers were forged, with the exception of one pledge, admitted to have been validly made by defendant William I. Smith.

Defendants contend that a single transaction cannot be made the basis of in personam jurisdiction over a nonresident, and cite some authority for the proposition. See Lone Star Motor Import, Inc. v. Citroen Cars Corp., (S.D. Texas, 1960) 185 F.Supp. 48; Dooly v. Payne, (C.A.5, 1964) 326 F.2d 941. This may be so under certain of the state "long-arm" statutes. But the Tennessee statute speaks of the "transaction of any business within the state" and not "doing business". In this respect, it is identical to Section 17(1)(a) of the Illinois Civil Practice Act, Ill.Rev.Stat.1965, c. 110, § 17(1) (a). In the case of Haas v. Fancher Furniture Co., (N.D.Ill., 1957) 156 F.Supp. 564, it was held that the phrase "transaction of any business" in the Illinois statute did not mean "doing business". As to the requirements of due process with reference to solitary transactions, the Court is of the opinion that it cannot be said categorically that single events cannot form the basis for in personam jurisdiction, although there are certainly limits imposed by due process and assuredly not every transaction will supply the "minimum contact" required. The plain meaning of the "minimum contact" rule as set forth by the Supreme Court is that the measure of the contact is not to be quantitative, but rather qualitative. As was said in *International Shoe:*

> "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. 319, 66 S.Ct. 160.

Of course, in the automobile cases, single events provide a "minimum contact" because of the nature and quality of the event. Olberding v. Illinois Central R. Co., supra.

Likewise, that a defendant did not perform a physical act within the State of Tennessee is not determinative of his or her lack of "minimum contact", for activities outside the state resulting in consequences within the state may subject those involved in such activities to in personam jurisdiction of the courts of the state. Young v. Masci, supra; Velandra v. Regie Nationale Des Usines Renault, (C.A.6, 1964) 336 F.2d 292.

The Court is persuaded that the facts, as developed at this point, establish that it has in personam jurisdiction of the defendants, Thomas Anglin Hamilton and Robert A. Russell and of William I. Smith and Harry Matthews in their capacity as representatives of the estate of Edward J. Smith. It appears that the note was executed by Hamilton, Russell, and Edward J. Smith, and the latter brought the note to Chattanooga and delivered it to the plaintiff. The proceeds of the note were provided at plaintiff's offices here. The note is payable here. Edward J. Smith purported to act as the agent of Hamilton and Russell in negotiating the loan, and whether he was in fact the agent of Hamilton and Russell in this regard appears to be one of the important issues in the case. The

transaction out of which the suit arises is no small thing, but rather involves upwards of one million dollars. The answers of Hamilton and Russell to this complaint set forth a series of transactions between the plaintiff and Edward J. Smith, purporting to act as an agent for the defendants Hamilton and Russell, over a period of several months during the year 1965. It is the opinion of the Court that those coming into a state, or represented in such state by agents, and soliciting and consummating the loan of such a large sum, and collecting the proceeds in such state, may fairly be said to have had at least "minimum contact" with such state so that maintenance of a suit therein based upon such transaction would not constitute a denial of due process of law. The contract which formed the basis for the exercise of jurisdiction in McGee v. International Life Ins. Co., supra, was of a much less substantial nature and involved an isolated transaction. Defendant there had entered into a mail-order insurance contract with a California resident, and was held thereby to be amenable to a California suit arising out of that contract. In Hanson v. Denckla, the *McGee* case was distinguished first upon the ground that the *Hanson* cause of action did not arise "out of an act done or transaction consummated in the forum State" and second upon the ground that insurance was treated by California as an "exceptional activity" subject to special regulation. While recognizing that *McGee* involved insurance and a corporate defendant, it must also be said that *McGee* is authority for the proposition that an isolated contract can be a substantial connection. See also Compania De Astral, S. A. v. Boston Metals Company, (1954) 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, wherein jurisdiction over the person of a South American corporation was upheld in a suit arising out of a contract signed by defendant in Panama and plaintiff in Maryland for the sale of three ships lying in a Maryland harbor. The statute in question there made foreign corporations subject to suit by Maryland residents in Maryland courts on any cause of action arising out of a contract made in Maryland whether the foreign corporation was "doing business" in Maryland or not. In the case of Baltimore Lumber Company v. Marcus, (D.C., Md., 1952) 208 F.Supp. 852, the Court observed that the individual defendant's presence in Maryland in connection with a series of transactions, his active management of the business for at least one week in Maryland, and his undertaking within the state to answer for indebtedness arising from the business was "more than sufficient" to satisfy the "minimum contacts" test, and in personam jurisdiction was properly authorized under the statute there in question. Melfi v. Goodman, (1962) 69 N.M. 488, 368 P.2d 582, was a case wherein the defendant, an individual, had contracted, in New Mexico, to sell a judgment to plaintiff, taking an assignment of a mortgage from plaintiff to secure installment payments, and was held thereby amenable to substituted service in a New Mexico suit arising out of this transaction, under a New Mexico statute providing for in personam jurisdiction in causes of action arising from "[t]he transaction of any business within this state". See also Oxley v. Zmistowski, Fla.App., 128 So.2d 186, in which the loan of money and acceptance of security in Florida was the "minimum contact". A nonresident who signed a lease as surety was held subject to suit in Florida when served under that state's "long-arm" statute in Florida Investment Enterprises, Inc. v. Kentucky Company, Fla. App., 160 So.2d 733.

However, with regard to the defendants, William I. Smith individually, May Powell Smith, Dale Smith Warner and Eunice Branch Hamilton, a different situation obtains. These parties are not themselves liable upon the note and it is not contended that they were involved in the negotiations or the transaction sued upon except to the extent that plaintiff contends that each pledged certain stock certificates as collateral for the loan.

Each of these defendants contends that the stock powers were not validly executed, but were forged and delivered to plaintiff without consent. William I. Smith does admit that he validly pledged one stock certificate. Under the circumstances, the Court is of the opinion that the connections between these defendants and the State of Tennessee is too tenuous to satisfy the requirements of the "minimum contacts" test. Although it is felt that the Tennessee statute is broad enough to include as a basis of in personam power both real and personal property, and that ownership of property within the state can be sufficient to provide "minimum contacts" in certain types of cases, the Court is not persuaded that this is such a case. At the hearing, counsel noted the lack of authority with regard to the question of ownership of property as a basis of power. Perhaps this is so because most claims arising out of the ownership of property can be satisfied out of the property itself, for which purpose in rem power is adequate. Such is the case here. Plaintiff claims no more from these defendants than their stock for the satisfaction of the alleged indebtedness. The stock certificates are properly before the Court, and the Court has jurisdiction, in rem, to determine the rights of all persons with regard thereto. Applicable principles of res judicata give assurance that this issue may be finally litigated here. Plaintiff can have no more even if he were successful in getting these defendants before the Court personally.

In summary, the Court is of the opinion that (1) service upon the defendants of summons and complaint satisfied the requirements of T.C.A. § 20–236, (2) the Court has in personam jurisdiction over defendants Thomas Anglin Hamilton, Robert A. Russell, and William I. Smith and Harry Matthews as co-executors of the estate of Edward J. Smith, (3) the Court has no in personam jurisdiction over the defendants, William I. Smith individually, Mary Powell Smith, Dale Smith Warner, and Eunice Branch Hamilton. However, the Court will not grant dismissal as to the defendants last named to the extent that it has in rem jurisdiction over property alleged to stand in their respective names and accordingly has power to adjudicate their rights in that property.