110–112 VAN WAGENEN AVENUE COMPANY, A LIMITED PARTNERSHIP, PLAINTIFF-APPELLANT, v. MILTON A. JULIAN *ET AL.*, DEFENDANTS-RESPONDENTS. [DOCKET NO. L 8169–66]

110–112 VAN WAGENEN AVENUE COMPANY, A LIMITED PARTNERSHIP, PLAINTIFF-APPELLANT, v. MILTON A. JULIAN *ET AL.*, DEFENDANTS-RESPONDENTS. [DOCKET NO. L 23025–66]

Superior Court of New Jersey
Appellate Division

Argued January 29, 1968—Decided June 6, 1968.

232

Before Judges GAULKIN, LEWIS and KOLOVSKY.

*Mr. Matthias D. Dileo* argued the cause for appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys; *Mr. Francis X. Journick,* of counsel; *Mr. Stephen E. Barcan,* on the brief).

*Mr. David Jerchower* argued the cause for respondents Milton A. Julian and Shirley Julian (*Messrs. Kessler & Kessler, Mr. Samuel I. Kessler,* of counsel).

The opinion of the court was delivered by

LEWIS, J. A. D.  Plaintiff's action to recover the amount due on a bond secured by a second real estate mortgage on property in Hudson County, whose lien had been extinguished by the foreclosure of a prior mortgage, was dismissed by the trial court on motion of defendants Julian.

The foreclosure sale took place on February 24, 1966. Plaintiff's suit was instituted on November 16, 1966, well within the time limit under *N. J. S. 2A:50-8.* The trial court's decision was based on the fact that plaintiff had not

filed in the office of the Register of Hudson County, before suit was commenced, a written notice of the proposed action. The court held that such an antecedent notice was a prerequisite, under *N. J. S.* 2A:50–10 (herein *section* 10), to plaintiff's right to maintain an action on its bond.

Plaintiff appeals, contending (1) its suit as a junior mortgagee for deficiency did not reopen the mortgagors' equity of redemption (*N. J. S.* 2A:50–9) and, therefore, the *section* 10 notice served no conceivable purpose and should not be enforced, and (2) defendants are estopped by their conduct from asserting the provisions of that section as an affirmative defense. For reasons hereinafter stated we reverse.

*Section* 10 provides:

"No judgment shall be entered by confession or in any action upon any bond pursuant to section 2A:50–8 unless prior to the entry of the judgment, if by confession, or prior to the commencement of the action on the bond, if the proceeding be by action, there shall be filed and recorded in the office of the clerk or register of deeds and mortgages as the case may be, of the county, in which the mortgaged premises are situate, a written notice to the same effect and in the same manner as is required by sections 2A:50–6 and 2A:50–7 of this title."

The aforementioned *sections* 6 and 7 deal with suits for deficiencies by mortgagees who have foreclosed their mortgages. The former section mandates the filing of a notice of intention before a foreclosing mortgagee may sue on a bond for a secured debt, and the latter section provides for the recording of filed notices. They promote an important function because a deficiency judgment upon a bond secured by a mortgage which has been foreclosed reopens the foreclosure and gives the mortgagor six months within which to redeem the property. *N. J. S.* 2A:50–4. The basic underlying purpose of *sections* 6 and 7 (originally enacted as *L.* 1907, *c.* 231) is to stabilize titles to mortgaged lands purchased under foreclosure sales. *Neu v. Rogge,* 88 *N. J. L.* 335, 339–340 (*E. & A.* 1915); *O'Connor v. Briscoe,* 119 *N. J. L.* 362, 365 (*E. & A.* 1938). As the *Rogge* court pointed out, the clear

legislative intent was to provide, through the means of a public record, a method "to make secure the title to a purchaser of mortgaged lands which had been foreclosed * * * and which were subject to redemption * * *" (at *p.* 339). In *O'Connor* the required filing of a *lis pendens* under *section* 6 (then *section* 51 of the Mortgage Act, 3 *C. S., p.* 3423) was held to be mandatory since "it declares a public policy for the conservation and protection of the public records relating to the title to lands."

The *ratio decidendi* of those cases, however, is inapplicable to situations embraced by *sections* 8, 9 and 10, which were adopted in 1942 (*L.* 1942, *c* 172, §§ 1, 2 and 3). *Section* 8 deals with actions on a bond where the mortgage lien has been extinguished by foreclosure of a prior mortgage, and requires the action to be commenced within one year after the sale of the property or confirmation thereof. *Section* 9 provides specifically that the proceedings "shall not open the foreclosure and sale of the mortgaged premises or result in any right of redemption." When the legislative history of the various sections of the statute dealing with proceedings upon mortgage bonds is analyzed and the statutory language construed *in pari materia* "to effectuate general legislative policy" (*State v. Wean*, 86 *N. J. Super.* 283, 289 (*App. Div.* 1965)), there appears to be no basis in history, public purpose or meaningful function for the existence or enforcement of the notice requirement of *section* 10. That section relates to proceedings by a junior lienor whose security has been extinguished, and no one is affected by the outcome of the suit on the bond other than the parties themselves. Indeed, in the instant matter, the litigants conceded that the notice requirement serves no conceivable purpose.

The only reasonable deduction is that the inclusion of *section* 10 in the 1942 enactment was the product of mistake or inadvertence by the Legislature in paraphrasing *sections* 6 and 7 which had been on the statute books since 1907. Accordingly, plaintiff argues that *section* 10 should be declared a nullity.

■ There is ample authority for the proposition that statutory interpretive technique permits the deletion and disregard of legislative language when the rejection thereof is essential to reach and carry out the purpose of the Legislature.

■ Professor Llewellyn, in his "Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed," 3 *Van. L. Rev.* 395, 404 (1950), observed that the thrust of "Every word and clause must be given effect," is parried by an equally important rubric, "If inadvertently inserted or if repugnant to the rest of the statute, they may be rejected as surplusage." Stated differently:

"While, as a general rule, every word in a statute is to be given force and effect, * * * unnecessary words or clauses, words inadvertently or mistakenly used, words to which no meaning at all can be attached, or words having no meaning in harmony with the legislative intent as collected from the entire act will be treated as surplusage, and will be wholly disregarded in the construction of the act in order to effectuate the legislative intent." 82 *C. J. S. Statutes* § 343, *pp.* 687–688 (1953).

Many interpretive decisions have recognized and invoked that principle of statutory construction, including *Brotherhood of R. R. Trainmen v. Central R. R. of N. J.,* 47 *N. J.* 508, 517–518 (1966) (section of prior enactment inadvertently repealed by subsequent act); *Schierstead v. City of Brigantine,* 29 *N. J.* 220, 230–231 (1959) (absurd consequences from the literal reading of a statute are to be avoided); *Westinghouse Electric Corp. v. United Electrical, etc.,* 139 *N. J. Eq.* 97, 105 (*E. & A.* 1946) (subsection of Anti-Injunction Act declaring other subsections to be lawful was mere surplusage); *Perry v. Commerce Loan Co.,* 383 *U. S.* 392, 400–401, 86 *S. Ct.* 852, 15 *L. Ed.* 2d 827, 833–834 (1966) (incorporation of section of Bankruptcy Act among prerequisites for confirmation of wage-earner extension plan was legislative oversight); *Baltimore Lumber Company v. Marcus,* 208 *F. Supp.* 852, 858 (*D. Md.* 1962)

(clause tending to nullify coverage of statute should be omitted); *American Federation of Labor v. Mann*, 188 *S. W. 2d* 276, 282 (*Tex Civ. App.* 1945) (express and inclusive language of subsequent section of Labor Act made preceding section mere surplusage); *Arkansas Oak Flooring Co. v. Louisiana & Arkansas Ry. Co.*, 166 *F. 2d* 98, 101 (5 *Cir.* 1948), *certiorari* denied 334 *U. S.* 828, 68 *S. Ct.* 1338, 92 *L. Ed.* 1756 (1948) (a clause need not be applied literally or at all if such application would provide a result contrary to the primary purpose of the statute); *Mason v. Bowerman Bros., Inc.*, 95 *R. I.* 425, 187 *A. 2d* 772, 776–777 (*Sup. Ct.* 1963 (phrase giving irrational meaning to statute excluded); *Pressman v. State Tax Commission*, 204 *Md.* 78, 102 *A. 2d* 821, 827–828 (*Ct. App.* 1954) (phrase inadvertently retained in amended statute). See, generally, *Llewellyn, The Common Law Tradition*: *Deciding Appeals* 374 (1960); 2 *Sutherland, Statutory Construction* (*3d ed. Horack* 1943), § 4926, *pp.* 462–466.

While there is no doubt that under proper circumstances we may disregard words or portions of a statute, we find no New Jersey case in which an entire section of a statute, plain and unambiguous on its face, has been nullified upon the ground that it is useless and was adopted by inadvertence or mistake. However, it is unnecessary to decide now whether we should go that far for we are satisfied that plaintiff substantially complied with the underlying objectives of the 1942 legislation and that defendants are estopped from raising the defense of failure to file a *section* 10 notice. Parenthetically, we pause to suggest that that section and other provisions of the statute deserve prompt attention by the Legislature. See discussion in the article of Saul Tischler (now Standing Master), "Note or Bond with Mortgage — Whither the Difference," 86 *N. J. L. J.* 572 (1963).

When counsel for plaintiff filed the complaint on November 16, 1966 with the Clerk of the Superior Court, he transmitted a letter to the clerk enclosing a *section* 10 notice directing it "to be filed in Lis Pendens Book, Hudson

County." The clerk was, of course, under no duty to send the notice to the Register of Hudson County. Instead, he treated it as part of the complaint and sent both to the Clerk of Middlesex County, who treated them in the same fashion.

Defendants were served with process on December 12, 1966. On December 23 defendants' then attorney called plaintiff's attorney and requested a 30-day extension of time in which to plead to the complaint. Plaintiff's attorney agreed and a stipulation was filed December 30, 1966 which stated "that the time within which said defendants may Answer or otherwise move as to the Complaint herein be and the same is hereby extended for thirty days." On January 25, 1967 defendants' then attorney requested an extension of 20 more days. Plaintiff again assented, but the trial court granted an extension of only ten days from January 31, 1967. On February 9, 1967, almost the very last day for filing, defendants filed an answer raising ten separate defenses, and asserting a counterclaim which, in nine paragraphs, charged a conspiracy between the foreclosing first mortgagee and plaintiff whereby bidding at the foreclosure sale was stifled and plaintiff repurchased the property from the foreclosing first mortgagee, the effect being to block the creation of a surplus which otherwise would have paid or reduced plaintiff's second mortgage.

Plaintiff's complaint alleged, "6. Plaintiff's action against the defendants was commenced within one year from the date of the sale of said mortgaged premises pursuant to *N. J. S. A.* 2A:50–8."

Defendants answered, "They have insufficient knowledge or information about the allegations of paragraph 6 and leave plaintiff to its proof." Defendants contended that paragraph 6 of the complaint did not allege compliance with *section* 10 of the statute but merely mentioned *section* 8. If compliance with *section* 8 is all that defendants understood from the allegations of paragraph 6 of plaintiff's complaint, then defendants' answer to paragraph 6 was untrue for they

knew the date when the foreclosure sale had taken place (they alleged it in their counterclaim) and they knew that the date upon which they were served with the complaint was well within the year. Since it is not to be assumed that defendants intended to file an untrue answer, it may be that defendants meant to put plaintiff "to its proof" of compliance with *section* 10. This appears likely when we examine the first, third and seventh separate defenses, which are as follows:

"First Separate Defense
The Complaint fails to set forth a cause of action against these defendants upon which relief can be granted.
\* \* \* \* \* \* \* \*
Third Separate Defense
Plaintiff has failed to commence and prosecute the within action against these defendants pursuant to the *Statutes* in such case made and provided.
\* \* \* \* \* \* \* \*
Seventh Separate Defense
The Superior Court of New Jersey lacks jurisdiction to hear and determine the merits of the within matter." (Emphasis ours)

With the copy of the answer and counterclaim filed on February 9, defendants served upon plaintiff a notice to take depositions on February 27 (three days after the expiration of the year limitation) and a letter saying, "Please advise what amount your client would be willing to accept in settlement of the above action and what terms would be available for the payment thereof \* \* \*." On February 20 plaintiff's attorney replied that plaintiff insisted on payment in full but "with reference to any terms for payment \* \* \* we will require statements of financial worth of both Mr. and Mrs. Julian \* \* \*." Settlement discussions continued until March 1967. On March 15, 1967 present counsel were substituted and advised plaintiff's attorney that no payment would be made by defendants because of plaintiff's failure to file a *section* 10 notice.

The complaint did not allege specifically that a *section* 10 notice had been filed, nor did it allege "generally that

all conditions precedent have been performed or have occurred." That perhaps justified a motion by defendants for a more definite statement (*R. R.* 4:12–5) or a motion to dismiss for failure to state a claim upon which relief can be granted (*R. R.* 4:12–2(*e*)), but it did not excuse defendants from stating "specifically and with particularity" that they asserted as a defense the failure to file the notice. *R. R.* 4:9–2 provides:

"In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. *A denial of performance or occurrence shall be made specifically and with particularity*, but when so made the party pleading the performance or occurrence has the burden of establishing it." (Emphasis supplied)

This court declared in *Hulbert v. Collins,* 22 *N. J. Super.* 217, 219 (*App. Div.* 1952), "The new rules, though liberalized to promote substantial justice, nevertheless require that adverse parties be apprised of claims to be met," citing *Grobart v. Society for Establishing Useful Mfrs.,* 2 *N. J.* 136 (1949). *Cf. Horby v. King,* 13 *N. J. Super.* 395 (*Law Div.* 1951); *R. R.* 4:8–2; 4:8–5(*a*).

Had defendants complied with the intent and spirit of the rules, even as late as February 9 when they filed their answer, plaintiff would have had time to file a *section* 10 notice and a new action. Here defendants obtained extensions of time which brought plaintiff to within two weeks of the year's limitation, and even then not only buried the defense in uninformative language in a complicated answer and counterclaim but engaged in conduct which tended to dissuade plaintiff from immediately inquiring into the meaning of the ten separate defenses, as plaintiff might have done had it not been asked about settlement and served with notice to take depositions at a time after the year was up.

If this were done deliberately by defendants to bemuse plaintiff until after the year expired, it would be indefensible. Defendants claim that their former lawyer did not know the

*section* 10 notice had not been filed. We accept the assurance of defendants that their former attorney acted in good faith. Nevertheless, it would be inequitable to permit plaintiff to suffer and defendants to benefit from the actions of defendants' agent which lulled plaintiff into inaction — especially when the required notice itself is meaningless and useless.

In short, defendants are estopped from raising the defense of failure to file a *section* 10 notice.

Plaintiff also appeals from the judgment entered in the second of the above-entitled actions. The complaint in the later case was filed on March 24, 1967, after plaintiff learned of the defect asserted by defendants with respect to the first suit. A *section* 10 notice was filed with the Register of Hudson County prior to the institution of the proceeding. The action was dismissed by the trial court because it had not been brought within one year from the date of the foreclosure sale, thus overruling plaintiff's contention that defendants' conduct in connection with the defense of the first action estopped them from relying on the one-year limitation of the statute. It is unnecessary to consider the merits of this companion appeal in view of our decision in plaintiff's original suit.

The judgment in the first action (*Docket L* 816966) is reversed and the cause remanded for trial upon the remaining issues and the counterclaim.

The judgment in the second action (*Docket L* 2302566) is modified to provide that the dismissal shall in no wise prejudice the continued prosecution of the first action, and, as so modified, the judgment is affirmed.

KOLOVSKY, J. A. D. (concurring in result). I agree that plaintiff's failure to file a Notice of Intention to sue for a deficiency in the Office of the Register of Hudson County prior to its institution of the first action on November 16, 1966 is not fatal to the maintenance of that action.

I reach that conclusion, however, not for the reasons given in the majority opinion but because I am satisfied, for the reasons hereinafter set forth, that *N. J. S.* 2A :50–10 has been superseded and is no longer in effect.

If *N. J. S.* 2A :50–10 is still effective, I find no basis for differing with the trial court's conclusion that the statutory language,

"No judgment shall be entered by confession or in any action upon any such bond pursuant to section 2A :50–8 unless prior to the entry of the judgment, if by confession or prior to the commencement of the action on the bond, if the proceeding be by action, there shall be filed and recorded in the office of the clerk or register * * * [a written notice of the proposed judgment or action],"

is a bar to the entry of a judgment for plaintiff. The statutory language is mandatory not directory. *Neu v. Rogge,* 88 *N. J. L.* 335, 341 (*E. & A.* 1915) ; 3 *Sutherland, Statutory Construction,* § 5814 (*3d ed.* 1943).

The majority's holding that defendants are estopped from raising the defense of failure to file a notice pursuant to *N. J. S.* 2A :50–10 is bottomed on defendants' alleged failure to specify that deficiency in sufficient detail in the Third and Seventh Separate Defenses of their answer. I do not agree.

If the statutory command is still effective, it matters not whether defendants' answer adequately referred thereto, nor indeed whether defendants answered at all. *Neu v. Rogge, supra,* at *p.* 341.

Further, in my opinion, plaintiff's proofs in opposition to defendants' motion for summary judgment do not constitute even *prima facie* proof of the essential elements of an equitable estoppel, *cf. Briscoe v. O'Connor,* 119 *N. J. Eq.* 378, 384 (*E. & A.* 1936) ; *Central R. R. Co. v. MacCartney,* 68 *N. J. L.* 165, 175 (*E. & A.* 1902), and certainly do not warrant the conclusion that the facts allegedly given rise to the estoppel exist without substantial controversy so as to permit this court to find in plaintiff's favor on that issue as a matter

of law. *Cf. R. R.* 4:58-2,3. I do not agree that a finding of estoppel may be based on the lack of specificity in the language of the Third and Seventh Separate Defenses of defendants' answer. The discovery procedures of the rules were available to plaintiff.

The majority opinion suggests that the enactment of *N. J. S.* 2A:50-10 may have resulted from a legislative "mistake or inadvertence." There is no evidence to support the suggestion other than the asserted lack of purpose therein. To accept the suggestion is to ignore the fact that in 1942, when what is now *N. J. S.* 2A:50-10 was enacted (*L.* 1942, *c.* 172, § 3), the Legislature had power to regulate practice and procedure. Requiring, as section 3 of the 1942 act did, the filing of a notice with the Register as a condition precedent to the prosecution of the action and the entry of judgment was within the legislative province. As the court said in *Pennsylvania Co. for Ins., etc. v. Marcus,* 89 *N. J. L.* 633, 638 (*E. & A.* 1916), with respect to the identical language found in *L.* 1907, *c.* 231, § 1 (now *N. J. S.* 2A:50-6):

"We are of opinion that the required notice is a matter of procedure, imposing no new burdens or restrictions which materially impair the value and benefit of the bond, for it does not modify the nature or extent of the remedy any more than would a statute requiring suit to be commenced by serving a complaint containing a copy of the bond, instead of by summons without such a copy, or the filing of a *lis pendens* before commencing an action."

Conjecture as to why the Legislature adopted the procedure provided in section 3 of the 1942 act (now *N. J. S.* 2A:50-10) serves no significant purpose; whatever the legislative purpose, the procedure mandated by it was to be followed as long as the Legislature continued to be vested with the power to prescribe rules of practice and procedure.

If *N. J. S.* 2A:50-10 is still in effect, it cannot be disregarded because a court feels that its enactment was the result of mistake or inadvertence. An ambiguity in a statute may

be resolved by ignoring words which appear to have been inadvertently included therein. So, too, "where a statute is ambiguous in terms and fairly susceptible of two constructions, the unreasonableness or absurdity which may follow one construction or the other may properly be considered," 50 *Am. Jur., Statutes.* § 377, *p.* 386.

But where there is no ambiguity and the language of the statute is plain, it may not be ignored. 50 *Am. Jur., Statutes,* § 378, *p.* 390. "The wisdom of a statute is not for the courts." *Dacunzo v. Edgye,* 19 *N. J.* 443, 454 (1955).

However, as I have indicated, I am satisfied that *N. J. S.* 2*A* :50–10 is no longer effective. It did not survive the adoption of the court rules governing practice and procedure promulgated pursuant to the Constitution of 1947. *Cf. George Siegler Co. v. Norton,* 8 *N. J.* 374, 381 (1952).

Our court rules provide the specific procedures to be followed and the steps to be taken to recover a judgment, whether it be on a bond or on any other evidence of indebtedness, beginning with the filing of the complaint and ending with the entry of judgment, whether by default or after trial.

I have heretofore noted that section 3 of the 1942 act (now *N. J. S.* 2*A* :50–10) is wholly procedural in its operation. In my opinion such a statute, which would add an additional procedural step to those called for by the rules as a preliminary to the entry of judgment, is in conflict with the rules, is superseded thereby and is no longer effective. *George Siegler Co. v. Norton, supra.*

My conclusion with respect to *N. J. S.* 2*A* :50–10 in no wise impugns the continued effectiveness of *N. J. S.* 2*A* :50–6 and 7 relating to a deficiency action on a bond whose accompanying mortgage has been foreclosed. Entry of a judgment in such an action gives the judgment debtor the right for a period of six months to institute an action for redemption. *N. J. S.* 2*A* :50–4. Sections 6 and 7 are not limited in their purpose and operation, as is section 10, to providing an additional procedural step. On the contrary, as noted in the majority opinion, the main purpose of sections 6 and

7 is to effectuate the public policy for "the conservation and protection of the public records relating to the title of lands," *Neu v. Rogge, supra,* at *p.* 340, by insuring

"that those who have occasion to search the title to the property in question may have notice that proceedings are to be instituted or have been instituted which may result in a change in the ownership." *(O'Connor v. Briscoe,* 119 *N. J. L.* 362, 364 *(E. & A.* 1938)).

Legislative regulation of the public title records is in no wise affected by the court rules; *N. J. S.* 2*A* :50–6 and 7 remain in full force and effect.